## FOSTER v. AUGUSTANNA COLLEGE & THEOLOGICAL SEMINARY.

No. 14233—Opinion Filed July 24, 1923.

Rehearing Denied Sept. 18, 1923.

**1. Bills and Notes — Mortgages — Negotiability—Effect of Transfer.**

A promissory note, though secured by a real estate mortgage, is still negotiable paper and imparts its negotiable character to the mortgage and brings both within the purview of the statutes relating to commercial paper; and where a promissory note is secured by real estate mortgage, the mortgage is not the subject of transfer independently of the debt which it secures, but the mortgage automatically passes with the transfer of the note and shares the same immunity from defense in the hands of purchasers in good faith for value and before maturity as the note itself.

**2. Same—Fraudulent Transfer—Innocent Purchaser.**

The purchaser of a promissory note secured by a real estate mortgage, before maturity, in good faith and without actual notice of any defect in the title of the transferrer, takes good and valid title thereto, notwithstanding the fact that the ownership of said note and mortgage was vested in another, and transfer made fraudulently by the transferrer and in breach of a trust relation with such other person.

**3. Same—Constructive Notice of Infirmities.**

The purchaser in good faith and for value of underdue negotiable paper is not chargeable with constructive record notice of defects and infirmities in the title of the transferrer not apparent on the face of the instrument, the true test in such cases being the presence or absence of bad faith.

**4. Same—"Bad Faith"—Statute.**

Mere failure to follow constructive record notice of a defect in the title of the transferrer of a promissory note does not amount to bad faith within the meaning of section 4106, Revised Laws of Oklahoma, 1910.

(Syllabus by Foster, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Garvin County; W. L. Eagleton, Judge.

Action by Ira T. Foster against the Augustanna College and Theological Seminary, of Rock Island, Ill., for possession of note and mortgage. Judgment for defendant, and plaintiff brings error. Affirmed

Everest, Vaught & Brewer, for plaintiff in error.

Hagan & Gavin, for defendant in error.

Opinion by FOSTER, C. This appeal involves the ownership and right of possession of a promissory note and real estate mortgage securing the same, executed on the 6th day of September, 1916, by John F. Hopkins and Myra Hopkins to the Aurelius-Swanson Company, Inc., of Oklahoma City, Okla. The note in controversy, omitting the interest coupons attached, is as follows:

"United States of America

"First Mortgage Note.

"Number 2176. Twenty-five Hundred Dollars.

"Secured by Real Estate

"Negotiated by Aurelius-Swanson Co., Inc.

"Oklahoma City, Okla.

"September 6, 1916.

"On the 1st day of December, 1926, without grace, for value received we promise to pay to the order of Aurelius-Swanson Co., Inc., at their office at Oklahoma City, Okla.

"Twenty-Five Hundred Dollars

in gold coin of the United States of America of the present standard of weight and fineness with the current rate of exchange on New York with interest until paid at the rate of 6 per cent. per annum payable annually according to the terms of ten coupon notes of even date herewith hereunto attached, executed by you and numbered one to ten inclusive.

"This note shall bear interest at the rate of 10 per cent. per annum after maturity and in case any installment of interest is not paid when due, the principal of this note shall at once become due and payable without further notice, at the option of the holder.

"John E. Hopkins,
"Myra Hopkins."

Appended to said note, but not incorporated in the body of it, was the following recital:

"This note is secured by first mortgage on the N. 1-2 of the S. W. 1-4 of sec, 15, and N. 1-2 of S. E. 1-4 and N. 1-2 or S. E. 1-4 of S. E. 1-4 of sec. 16, township 1 north, range 1 east of the I. M. containing 180 acres more or less, Garvin county, Oklahoma.

The mortgage covering the real estate above described was dated September 6, 1916; was properly executed and acknowledged and was recorded in book 71 of mortgages at page 569, in the records of Garvin county, Okla., at 11 o'clock a. m. on October 21, 1916.

The plaintiff in error, as plaintiff below, sued the defendant in error, as defendant below, in the district court of Garvin county, to establish his ownership of said note and mortgage and for the possession thereof.

The cause was tried in the court below upon an agreed statement of facts. The trial resulted in a judgment for the defendant in error, establishing its ownership and right of possession to the note and mortgage in controversy, and quieting its title against the claims of the plaintiff in error. From this judgment the plaintiff in error appeals, and complains that there was error committed by the trial court in finding and holding as a matter of law, upon the agreed statement of facts, that the defendant in error was the owner of and entitled to the possession of said instruments.

The agreed statement of facts, with the various exhibits attached, are somewhat lengthy, and we shall not attempt to copy the same in full, but shall content ourselves with a synopsis of the salient facts as we have been able to gather them from the agreed statement.

For convenience, the parties will be referred to as they appeared in the court below.

It appears that the defendant obtained its possession of the note and mortgage in controversy under the following circumstances: After the execution and delivery of said note and mortgage by John F. Hopkins and Myra Hopkins to Aurelius-Swanson Company, the plaintiff paid to the Aurelius-Swanson Company the sum of $2,500, the face of said note, and the note and mortgage were assigned to the plaintiff by good and sufficient assignment, the same being dated November 23, 1916, and being filed for record in the office of the county clerk of Garvin county, Okla., on the 11th day of July, 1917, at 8 o'clock a. m., and recorded in book 76, page 374, of the records of Garvin county, Okla.

No indorsement was placed by Aurelius-Swanson Company upon said note or mortgage, but the assignment, as made, was accomplished solely by virtue of a separate instrument of assignment. The manual possession of the note and mortgage were, however, delivered to the plaintiff at the time of the assignment and the plaintiff has never parted with the possession thereof, except in the following manner: That through his son and agent, Ira M. Foster, of Wichita, Kan., the plaintiff, on the 18th day of January, 1918, delivered said note and mortgage, together with an abstract of title to the land involved in this action, to the Aurelius-Swanson Company, and took a receipt therefor from said company, in words and figures as follows, to wit:

"Oklahoma City, Oklahoma,
"January 18, 1918.

"The following loans have this day been delivered to the undersigned by Ira T. Foster, assignee, and are to be held by the Aurelius-Swanson Company, Inc., as custodian.

"All interest payments which shall mature from time to time on loans, will be mailed to the above mentioned assignee promptly on date due, and interest remitted at maturity, and the interest coupons will be clipped from each bond by the company.

"It is understood that Mr. Foster is leaving his papers in the company's vault for convenience only, and papers will be returned to him on his request:

| | | |
|---|---|---|
| "No. 5082—William I. Ross | | $ 400.00 |
| "No. 3171—J. R. Justice | | 2,200.00 |
| "No. 2176—John F. Hopkins | | 2,500.00 |
| "No. 3146—Lon Karr | | 3,000.00 |
| "No. 2177—E. G. Sublette | | 3,400.00 |
| "No. 3121—C. A. Burns | | 3,500.00 |
| | | $15,000.00 |

"Aurelius-Swanson Co., Inc.
"By E. L. Aurelius, President."

The receipt was never recorded. Thereafter, without returning said note and

mortgage, together with the abstract, to the plaintiff, and without paying anything therefor, and without acquiring the legal title thereto, and while said note, mortgage, and abstract were in the possession of Aurelius-Swanson Company, under the terms set out in said receipt, it sold said note and mortgage to the defendant, receiving therefor the sum of $2,475 lawful money of the United States, said money being paid, and said note and mortgage being delivered to the defendant by the Aurelius-Swanson Company, on or about the 2nd day of August, 1921; as a part of said transaction, the following indorsement was placed by Aurelius-Swanson Company on said note:

"For value received we hereby assign and transfer the within note, together with all my right, title and interest in and to the mortgage deed securing the same to Augustanna College and Theological Seminary, without recourse.

"Aurelius-Swanson Co., Inc.
"By E. L. Aurelius, President."

That in addition to such indorsement, and as a part of the same transaction, the Aurelius-Swanson Company executed an assignment to the defendant of said mortgage and note, said assignment being filed for record in the office of the county clerk of Garvin county, Okla., on the 19th day of October, 1921, and recorded in book 109, at page 60, of the records of said Garvin county, Okla.; that at the time of payment of the money by the defendant to the Aurelius-Swanson Company, it and its officers and employes had no actual knowledge that said note and mortgage belonged to Ira T. Foster, and had no actual knowledge of the receipt hereinbefore set out, and had no actual knowledge that the assignment of said mortgage to plaintiff was of record in the office of the county clerk of Garvin county, Okla., but accepted the said transfer of said mortgage and said note, and paid said money without examining or causing to be examined the records of Garvin county, Okla.

It appears at the time of the transfer of said note and mortgage to the defendant, that there was no default in any of the terms and conditions of the note or mortgage. That the Aurelius-Swanson Company has never returned to the defendant any of the money paid by said defendant for the transfer of said note and mortgage, and that plaintiff's assignment of said mortgage is still intact, and that said mortgage has never been released or assigned upon the records of Garvin county, Okla.,

by the plaintiff, and that while said mortgage is unpaid, there has been no default in the terms thereof.

It appears from the agreed statement of facts that Ira M. Foster, the son and agent of the plaintiff, was required to perform military duty as a soldier for the United States in the late war with Germany, and that this furnished the occasion for the delivery of said note and mortgage to Aurelius-Swanson Company, under the terms and conditions set out in the hereinbefore mentioned receipt.

Under the foregoing circumstances, the defendant obtained the possession of said note and mortgage, and still continues in the possession thereof.

It further appears that the Aurelius-Swanson Company is bankrupt, and that it has no funds out of which the plaintiff and defendant can be reimbursed for the frauds practiced on them by it.

The subject-matter in controversy in the case at bar is a promissory note and a real estate mortgage securing the same. The question is, Did the defendant acquire the title thereto by transfer from the Aurelius-Swanson Company, in spite of the fact that the Aurelius-Swanson Company had no title thereto at the time of the purported transfer? It is apparent at a glance that the correct answer to this question turns, first, upon whether the rights of the parties, in the circumstances in which they are placed, are to be governed and controlled by the law relating to commercial paper; and, second, whether, if their rights are so governed, the law of constructive notice can be made to apply.

It is agreed by counsel for both plaintiff and defendant that the execution of the note and mortgage in controversy constitutes one transaction and must be construed together. Does a promissory note, by virtue of being secured by a real estate mortgage, lose its character as commercial paper, or does the promissory note impart its negotiable character to the mortgage, thus bringing them both within the purview of the statutes dealing with commercial paper? That a promissory note so secured does not lose its character as commercial paper, and that it imparts its negotiable character to the mortgage and brings both within the purview of the statutes dealing with commercial paper, is, we think, firmly established by these authorities: Farmers' Nat. Bank of Tecumseh v. McCall, 25 Okla. 600, 106 Pac. 866; Clark et al. v. Grant, 26 Okla. 398, 109 Pac. 234; Local

Investment Co. v. Humes et al., 51 Okla. 251, 151 Pac. 878; Smith et al. v. First Nat. Bank of Cadiz, Ohio. 23 Okla. 411, 104 Pac. 1080; Westlake v. Cooper, 69 Okla. —, 171 Pac. 859; Carpenter v. Longan, 16 Wall. (U. S.) 271, 21 L. Ed. 313.

Having determined that the rights of the parties in the instant case must be governed by the law relating to commercial paper, the next inquiry is, What is the law of this state with respect to the rights of a purchaser in good faith of underdue commercial paper? Section 4106, Revised Laws of Oklahoma, 1910, provides:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

It is conceded that defendant had no actual knowledge of the assignment to the plaintiff. It is well established by the repeated decisions of our Supreme Court that there must be actual knowledge or bad faith to deprive a purchaser, before maturity and for value, of a negotiable note of. the privilege of being a holder in due course. City State Bank v. Pickard, 35 Okla. 243, 129 Pac. 38; Delk et al. v. City Nat. Bank of Duncan, 85 Okla. 238, 205 Pac. 753; Southwest Nat. Bank of Commerce of Kansas City v. Todd et al., 79 Okla. 263, 192 Pac. 1096; McPherrin v. Tittle et al., 36 Okla. 510, 129 Pac. 721, 44 L. R. A. (N. S.) 395; Security Trust & Savings Bank of Charles City, Iowa, v. Gleichmann, 50 Okla. 441, 150 Pac. 908.

Even gross negligence on the part of a taker of a negotiable instrument will not defeat the title of a holder for value and before maturity, according to the decision of the Oklahoma Supreme Court in McPherrin v. Tittle et al., supra.

While Aurelius-Swanson Company was not the real owner of the note and mortgage in controversy, it was the apparent owner, and the defendant, being an innocent purchaser of the note and mortgage from the apparent owner, took good and valid title thereto, even though the transfer was made fraudulently and in breach of trust. Goodman v. Simonds, 20 How. 343, 61 U. S. 934; City State Bank v. Pickard, supra; Knight v. Seney (Ill.) 124 N. E. 813.

It is argued by counsel for plaintiff in error in their brief that the failure on the part of the defendant to search the records of Garvin county was negligence on its part, but we do not understand them as contending that the constructive notice imparted by the record of plaintiff's assignment in that county amounted to a showing of bad faith on defendant's part. within the meaning of section 4106, Revised Laws of 1910.

In Taylor v. American National Bank, 60 South. 783, it was held by the Supreme Court of Florida that constructive record notice of an infirmity in a note does not amount to bad faith within section 2989 of the General Statutes of that state, relating to infirmities and defects in negotiable instruments.

The next inquiry is, Can the law of constructive notice be made to apply to a purchaser of underdue commercial paper, secured by a real estate mortgage, said purchaser being a purchaser in good faith and having no actual notice of defects and infirmities in the title of the transferrer?

It is insisted by counsel that the record of plaintiff's assignment of the note and mortgage in controversy in Garvin county, Okla., imparted constructive notice of a defect in the title of Aurelius-Swanson Company, and that while the defendant is not chargeable with actual notice or with bad faith, the defendant was chargeable, nevertheless, with notice by operation of law of the defect in the title of the Aurelius-Swanson Company, and they cite the case of Murphy v. Barnard, 162 Mass. 72, 44 Am. St. Rep. 340.

In this jurisdiction it is well settled by repeated decisions of our Supreme Court that where a mortgage is given to secure a negotiable promissory note, the note imparts. its negotiable character to the mortgage and both are brought within the purview of the statutes dealing with commercial paper, and that the mortgage is a mere incident to the note, and an indorsement of the note automatically assigns the mortgage, and the attempted assignment of the mortgage without a transfer of the debt it secures is a nullity.

The doctrine of the Massachusetts case overlooks this fundamental and controlling principle of the jurisprudence of this state, and bases its holding upon the theory of a sale of a conditional estate in the land as evidenced by the mortgage and that this sale and transfer brings the entire transaction within the purview of the statutes relating to the registration of title to real estate, and that the doctrine of constructive notice is therefore applicable.

To follow the holding in this case would, in our judgment, overthrow a settled rule in this state—that a mortgage is not a conveyance vesting in the mortgagee any estate in land, but is a mere security operating upon the property as a lien (Gillett v. Romig et al., 17 Okla. 324, 87 Pac. 325), and would overthrow another equally well-established principle—that a mortgage securing a note is a mere incident of the debt and automatically passes with the transfer of the note, and that an attempted assignment of the mortgage alone is a nullity. Carpenter v. Longan, supra.

It may be observed that the doctrine of constructive notice is applicable only to a person who is dealing with the land itself, and since the purchaser of a negotiable promissory note, secured by a mortgage, is not dealing in land, there is no field for the operation of the registry laws in cases of this kind.

An examination of the authorities discloses to our satisfaction that the doctrine of constructive notice has never been applied to commercial paper, the true test as to negotiable paper being that of good or bad faith. Hynes v. Winston (Tex. Civ. App.) 40 S. W. 1025; Daniel v. Speth (Tex. Civ. App.) 168 S. W. 509; Corpus Juris, vol. 8, page 518; Minell & Co. v. Reed, 26 Ala. 730.

Irrespective, however, of the established rule to make the doctrine of constructive notice applicable to commercial paper, it amounts to an interpolation of the statute itself.

Section 4106, supra, provides:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

As heretofore pointed out, it has been definitely held in the case of Taylor v. American National Bank, supra, that constructive record notice of an infirmity in a note does not amount to bad faith, within the meaning of a similar statute of the state of Florida. Under the rule laid down in this case, the reading into the statute of the words "constructive notice" would amount to giving a meaning to the statute not warranted by the plain language used therein.

We are therefore of the opinion that the case of Murphy v. Barnard, supra, is not in consonance with the decisions and statutes of this state, and is not controlling.

We are not impressed by the argument on either side of the equities in the case based upon a comparison of the negligence and fault of the parties in respect of the transaction involved. The law relating to commercial paper takes into account that hardships may sometimes result from the enforcement of the salutary provisions of the law itself, which were enacted in the interest of trade and to give security and freedom in commercial dealings and transactions. This law is now a vital part of our commercial life and its salutary influence upon the larger interests of the community and state must not be swept aside upon considerations alone of injustice and hardship in individual cases.

Applying, as we must, the law relating to negotiable paper to the transaction involved in the instant case, we are driven to the conclusion that the title of the defendant to the note and mortgage in controversy must prevail over the claim of the plaintiff, notwithstanding the same was transferred to the defendant by Aurelius-Swanson Company in fraud of the rights of plaintiff without its having any title thereto.

For the reasons stated in the opinion, the judgment of the lower court is affirmed.

By the Court: It is so ordered. ·