## WENDLING et ux. v. AURELIUS-SWANSON CO. et al.

No. 14396—Opinion Filed March 4, 1924.

Rehearing Denied Feb. 3, 1925.

### 1. Mortgages—Negotiable with Note.

A mortgage, given to secure a negotiable promissory note, is negotiable, and both the note and mortgage are governed by the law pertaining to commercial paper.

### 2. Same—Bona Fide Purchasers.

A mortgage given as security for a negotiable promissory note, is an incident thereto and passed with the note into the hands of the assignee, without a separate indorsement or assignment; and is entitled to the same protection in the hands of an innocent purchaser, before maturity, as the note itself.

### 3. Same—Notice—Records.

A purchaser of a negotiable promissory note, secured by a real estate mortgage, in good faith, before maturity, and without actual notice or knowledge of any defect in the title of the assignor, takes good title to said note and mortgage; and said purchaser or assignee is not chargeable with constructive notice of defects or infirmities in the title of the assignor as shown by the records in the office of the county clerk, which are not apparent on the face of said instrument; but the true test, as to the assignee being an innocent purchaser and entitled to protection as such, is whether his action in taking said instrument amounts to bad faith.

(Syllabus by Jarman, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Marshall County; Geo. S. March, Judge.

Action by George Wendling and Lizzie Wendling against Aurelius-Swanson Company et al. Judgment for defendant McIntyre, and plaintiffs bring error. Affirmed.

Warren K. Snyder, for plaintiffs in error.

Everest, Vaught & Brewer, for defendants in error.

Opinion by JARMAN, C. On November 10, 1919, J. W. Gray and his wife, Mollie Gray, and M. E. Koen, being the owners of certain real estate in Marshall county, Okla., executed a mortgage on said real estate to the Aurelius-Swanson Company, Inc., of Oklahoma City, to secure a promissory note, given by said mortgagors to the Aurelius-Swanson Company in the principal sum of $5,000, which mortgage was duly filed for record on December 24, 1919, in the office of the county clerk of Marshall county. On November 15, 1919, the Aurelius-Swanson Company, for the consideration of $5,000 and accrued interest, sold said note and mortgage and assigned and transferred the same to "George Wendling and wife," by a separate instrument in writing, and said assignment was duly filed for record in the office of the county clerk of Marshall county on March 29, 1920. Thereafter, the Aurelius-Swanson Company wrote to George Wendling asking that he return the note and mortgage as the makers thereof desired to take up the same and pay off said indebtedness; and on September 17, 1921, prior to maturity of said indebtedness, the said George Wendling executed an assignment of said note and mortgage to the Aurelius-Swanson Company and sent said assignment, which was a separate instrument, and the note and mortgage to the Aurelius-Swanson Company for the purpose of collecting the same, and said assignment was filed for record on September 26, 1921. F. McIntyre, who resided in California, had purchased a good many notes and mortgages from the Aurelius-Swanson Company, and on September 23, 1921, in order to take up a portion of said paper held by McIntyre, the Aurelius-Swanson Company transferred and assigned the note and mortgage, which Wendling had assigned to said company for collection, to F. McIntyre, and the Aurelius-Swanson Company received credit on the amount it owed McIntyre to the extent of the Wendling note, and said assignment to McIntyre was duly filed for record on September 26, 1921. Inasmuch as the original assignment of the note and mortgage from Aurelius-Swanson Company was to "George Wendling and wife," her name not being given, McIntyre, upon the advice of counsel, required the Aurelius-Swanson Company to procure an additional assignment from Lizzie Wendling, the wife of

George Wendling, before he turned over to Aurelius-Swanson Company the notes he held against said company, and on September 27, 1921, Lizzie Wendling executed a separate assignment of said note and mortgage to the Aurelius-Swanson Company, which was duly filed for record in the office of the county clerk of Marshall county on October 3, 1921. F. McIntyre had no actual knowledge of the note and mortgage having been sent by Wendling and wife to the Aurelius-Swanson Company for collection, merely. The note and mortgage in question were not due at any of the times herein referred to nor at the time this suit was filed and determined.

This action was brought by the plaintiffs, George Wendling and Lizzie Wendling, to establish the ownership of said note and mortgage. The other parties, named herein as defendants, have no interest in this controversy. The case was submitted to the court without a jury, and at the conclusion of plaintiffs' evidence, the defendant interposed a demurrer thereto, which was sustained, and judgment rendered for the defendant, McIntyre, and the plaintiffs bring error.

It is the contention of the plaintiffs in error that there were sufficient circumstances which McIntyre was bound to take notice of to put him upon inquiry at the time he purchased said note and mortgage, which would have led to the discovery of the fraud practiced upon the plaintiffs by the Aurelius-Swanson Company in the sale of said instruments, and, therefore, McIntyre is not an innocent purchaser for value. The plaintiffs contend that at the time the Aurelius-Swanson Company sold and attempted to assign said note and mortgage to McIntyre, that the records in the office of the county clerk showed that said note and mortgage were originally sold and assigned by the Aurelius-Swanson Company to "George Wendling and wife" and that George Wendling, only, had reassigned said instrument to the Aurelius-Swanson Company, and that since the records in the office of the county clerk did not show any reassignment of said note and mortgage by the wife of George Wendling to the Aurelius-Swanson Company, that McIntyre was bound to take notice of the rights of said wife in and to said instruments, and that if inquiry had been made by McIntyre, such as a prudent man, under such circumstances, would have done, it would have led to the discovery of the fact that Aurelius-Swanson Company did not own said note and mortgage but was merely holding the same for collection. The plaintiffs cite, in support of this contention, the case of Cooper v. Flesner, 24 Okla. 47, 103 Pac. 1016, and many other authorities, which hold that where one purchases land with knowledge of such facts as would put a prudent man upon inquiry, which, if prosecuted with ordinary diligence, would lead to actual notice of rights claimed adversely to his vendor's title, he cannot claim to be an innocent purchaser. This rule, however, is not applicable to negotiable instruments.

It is well settled that the law pertaining to commercial paper governs a promissory note and a real estate mortgage given to secure the same (Farmers' Nat. Bank of Tecumseh v. McCall, 25 Okla. 600, 106 Pac. 866; Local Inv. Co. v. Humes, 51 Okla. 251, 151 Pac. 878); and, therefore, the rights of a purchaser of commercial paper prior to maturity thereof are governed by section 7726, Comp. Stat. 1921, as follows:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

In discussing this question, the court in the case of Fleming v. Drew, 88 Okla. 160, 212 Pac. 306, held:

"In an action on a promissory note, by a purchaser in due course, for a valuable consideration, before maturity, the defense that the holder is not an innocent purchaser cannot be established by suspicion of defect of title, or the knowledge of circumstances which would excite suspicion in the mind of a prudent man, or of circumstances sufficient to put him upon inquiry, but that result can be produced only by bad faith."

This question is again fully and thoroughly discussed by Commissioner Foster in the case of Foster v. Augustanna College & Theological Seminary, 92 Okla. 96, 218 Pac. 335, wherein it is held:

"The purchaser in good faith and for value of underdue negotiable paper is not chargeable with constructive record notice of defects and infirmities in the title of the transferrer not apparent on the face of the instrument, the true test in such cases being the presence or absence of bad faith."

It is conceded that McIntyre had no actual knowledge of the defects in said instruments, and there is no evidence to show that

there was any bad faith on the part of McIntyre in purchasing said note and mortgage, and under the authorities above quoted, the judgment of the trial court is affirmed.

By the Court: It is so ordered.